```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/22/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
SHANELL MARTINEZ,                              :
                                               :
                          Plaintiff,           :
                                               :
            -against-                          :
                                               :
189 CHRYSTIE STREET PARTNERS, LP,              :     22-CV-3111 (VEC)
d/b/a THE BOX, VARIETY WORLDWIDE, LLC,         :
SIMON HAMMERSTEIN, JAVIER VIVAS,               :     OPINION & ORDER
GIZA SELIMI, and NENAD KARAC,                  :
                                               :
                          Defendants.          :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Plaintiff, once a "bottle server" at The Box, has sued her former employers for harassment, discrimination, wage and hour violations, and sex trafficking pursuant to the New York State Human Rights Law ("NYSHRL"), New York City Human Rights Law ("NYCHRL"), the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and the Trafficking Victims Protection Act ("TVPA"), as well as for fraud and unjust enrichment. Am. Compl., Dkt. 39.[1] Defendants moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and Plaintiff opposed the motion. Mot., Dkt. 42; Pl. Opp., Dkt. 59. For the reasons discussed below, the motion to dismiss is DENIED, and the stay on discovery is lifted.[2] Plaintiff is further ordered to show cause why her NYLL recordkeeping claims should not be dismissed for lack of standing.

---

[1]   On October 5, 2022, the Court ordered Plaintiff to file a redlined version of the Amended Complaint in accordance with the Undersigned's Individual Rules. Order, Dkt. 40. The version of the amended complaint subsequently filed by Ms. Martinez at docket entry 41 contains minor differences from the amended complaint filed at docket entry 39. Because Plaintiff did not seek leave from this Court or consent from Defendants to further amend the complaint, the Court considers only the amended complaint filed at docket entry 39. *See* Fed. R. Civ. P. 15(a) (permitting a party to amend as of right only once).

[2]   On October 28, 2022, the Court granted Defendants' motion to stay discovery pending resolution of the motion to dismiss. Order, Dkt. 46.

1

**BACKGROUND**[3]

Ms. Martinez was formerly employed as a bottle server by The Box, a nightclub known for its erotic atmosphere.[4]  Am. Compl. ¶¶ 3, 37.  The Box is owned by Variety Worldwide, LLC, and individual Defendants, Messrs. Hammerstein, Vivas, and Selimi, are owners, executives, or managers at The Box.  Id. ¶¶ 7–11, 36.

**A. Harassment**

Ms. Martinez was employed at The Box from 2017 until she was furloughed in early 2020 when the New York Governor's Executive Order forced The Box's closing as part of the state's response to the COVID-19 pandemic.[5]  Id. ¶¶ 33–34, 38, 187–88.  From the outset, the individual Defendants instructed Ms. Martinez to accept that male patrons would "be handsy," id. ¶ 44, to flirt with male patrons, and to give them "anything that they wanted," including sexual favors, id. ¶ 27; see also id. ¶¶ 44, 62–63, 154–55.  The individual Defendants frequently made sexually and racially charged comments to and about Ms. Martinez; those comments at times escalated into sexual advances and nonconsensual sexual contact.  See, e.g., id. ¶¶ 51, 60, 107–13, 125, 143, 160, 162, 169.

Within the first month of Ms. Martinez's employment, Mr. Hammerstein brought her to a private room and bathroom in which female staff could provide male customers and employers sexual services.  Id. ¶¶ 49–51.  Mr. Hammerstein ordered Ms. Martinez to spread her legs in a

---

[3]   The well-pled facts in the Complaint are assumed true for purposes of evaluating Defendant's motion to dismiss.  See Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014).

[4]   See, e.g., Melena Ryzik, Is the Box Still Edgy?, N.Y. Times (Oct. 28, 2007), https://www.nytimes.com/2007/10/28/fashion/28boite.html (describing the Box "as a Moulin Rouge-style theater of the extreme," at which "[t]he one constant seems to be female nudity"); Jacob Bernstein & Sadiba Hasan, The Met Gala Was Just the Start. Welcome to the After-Parties., N.Y. Times (May 4, 2023), https://www.nytimes.com/2023/05/02/fashion/met-gala-after-parties.html (describing the Box as a "burlesque club").

[5]   The Box reopened at some point but Plaintiff was never recalled to work.  Am. Compl. ¶ 188.

bathroom stall; Mr. Hammerstein stated he had sexual intercourse with women in that stall and had installed a mirror so that he could watch himself having intercourse. *Id*. ¶¶ 51–52. On other occasions, Mr. Hammerstein touched Ms. Martinez, praised her physical appearance, asked her to spin and show him her body, and inquired into her relationship status. *See, e.g.*, *id*. ¶ 60. Mr. Selimi and Mr. Karac also told Ms. Martinez that they preferred women with darker skin, and Mr. Karac commented on Ms. Martinez's anatomy. *Id*. ¶¶ 107–112, 159–60.

Mr. Karac propositioned Ms. Martinez and touched her sexually, including on her buttocks, and pressed his penis against her buttocks and leg. *Id*. ¶¶ 111–13, 121, 125–26, 143–44, 160, 177. In October 2017, Mr. Karac cornered Ms. Martinez while she was undressing in the employee changing room. *Id*. ¶ 115. Mr. Karac refused to leave when asked and, instead, locked the door and blocked her exit. *Id*. ¶ 115–16. Subsequently, Mr. Karac stated that he was aware of and enjoyed the inaccurate rumors that Ms. Martinez was having sex with him to keep her job. *Id*. ¶¶ 117–18. When Ms. Martinez continued to refuse Mr. Karac's sexual advances, Mr. Karac reduced her scheduled work hours. *Id*. ¶¶ 119–20. On September 20, 2019, Mr. Karac asked Ms. Martinez to comment on the size of a dildo, unzipped his pants, placed the dildo in his pants, approached Plaintiff, and pointed his groin toward her. *Id*. ¶ 163.

These incidents caused Ms. Martinez to suffer mental distress, including panic attacks. *Id*. ¶¶ 145, 188. Ms. Martinez reported the harassment to Mr. Vivas and provided him a list of witnesses. *Id*. ¶¶ 179–82. In November 2019, Mr. Vivas suspended Mr. Karac for two weeks and provided him remedial training. *Id*. ¶¶ 174, 179–80. Although Mr. Vivas never spoke to the employees Ms. Martinez had identified as witnesses, he told Ms. Martinez that no one had corroborated her allegations. *Id*. ¶¶ 180, 182. After the two-week suspension elapsed, Ms.

Martinez was again required to report to Mr. Karac; Mr. Karac again reduced her scheduled work hours. *Id*. ¶¶ 183–84.

### B. Compensation

In addition to harassing her, Ms. Martinez alleges that Defendants did not fairly compensate her. Defendants required Ms. Martinez to recruit clients, including by dressing in provocative clothing and visiting bars five nights a week; at times, she accompanied men she had recruited to The Box, where she entertained them. *Id*. ¶¶ 72–79, 94. Although she was promised a ten percent commission based on the spending of each customer she recruited, she was not paid her full commission. *Id*. ¶¶ 100–02. When she complained about unpaid wages, Defendants retaliated. *Id*. ¶ 104.

Once or twice a week, Defendants required Ms. Martinez to work overtime but did not pay her overtime wages, and Mr. Karac would sometimes clock her out while she was still working. *Id*. ¶¶ 81–86. Two or three days per week, Ms. Martinez was required to be on call from 5:00 p.m. until 3:00 a.m.; she was not compensated for being on call unless she was actually called in to work. *Id*. ¶¶ 87–88. Ms. Martinez was also not compensated for staff meetings, which lasted two to three hours and were held twice a month. *Id*. ¶ 89.

Ms. Martinez's hourly wage ranged from $8.00 to $10.00 per hour, but, at all times, her hourly wage rate was below the applicable minimum wage in New York City for tipped employees. *Id*. ¶¶ 65–71, 190–95. In August 2018, Mr. Vivas acknowledged that Defendants had not been paying its employees the minimum wage, raised the hourly wage for service staff to $10 per hour, and required service staff and non-service staff to share tips. *Id*. ¶¶ 131–38. Defendants reduced the number of hours Ms. Martinez was scheduled to work in retaliation for her complaints about the tip pooling requirement. *Id*. ¶ 139.

# DISCUSSION

## I. The Court Declines to Enforce the Purported Settlement Agreement at This Stage of the Litigation

Defendants primarily seek to dismiss the Amended Complaint in light of a settlement agreement purportedly reached by the parties in advance of litigation. *See* Defs. Mem., Dkt. 44 at 1. The Court declines to depart from the general rule that courts may not consider documents that are not part of the complaint on a motion to dismiss unless they are public documents, incorporated by reference or otherwise integral to the complaint, or relied upon by plaintiff in filing the complaint. *See, e.g.*, *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156–57 (2d Cir. 2006). While courts in this Circuit have occasionally exercised their discretion to consider settlement agreements even when those criteria are not met, they have only done so when the parties entered into an agreement in good faith, the enforcement of which would require dismissal of the entire complaint. *See Deutsch v. Pressler, Felt & Warshaw, LLP*, 535 F. Supp. 3d 322, 327 (S.D.N.Y. 2021) (citation omitted); *In re Refco Inc. Secs. Litig.*, 2012 WL 4053939, at *2–3 (S.D.N.Y. Aug. 8, 2012), *report and recommendation adopted*, 2012 WL 4009175 (S.D.N.Y. Sept. 12, 2012)); *but see N.Y. Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 277 (S.D.N.Y. 2013) (declining to consider settlement agreement referenced in one paragraph of the complaint on a motion to dismiss). Courts may only enforce settlement agreements on a motion to dismiss, however, if it is clear that there is no dispute regarding the document's authenticity, accuracy, or relevance. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

The Court declines to enforce the parties' preliminary settlement agreement at this juncture in light of factual issues regarding whether the agreement submitted by Defendants

represents accurately the scope and content of the parties' purported agreement.[6] The unsigned draft of the settlement agreement submitted by Defendants is dated July 14, 2021, but Plaintiff suggested, and Defendants accepted, edits to the settlement agreement after that date. *See* Pete Decl. Ex. 4, Dkt. 43 at 1; Pete Decl. Ex. 2, Dkt. 43 at 6; *see also* Pete Decl., Dkt. 43 ¶ 10.[7] Although Plaintiff's then-counsel indicated via email that her edits were "minor," it is unclear whether her edits were to substantive provisions relevant to the present dispute, including the general release provision.[8] *See* Pete Decl. Ex. 2 at 6. In short, there is an issue of fact whether the document that Defendants hold out as reflecting the parties' preliminary settlement agreement is an accurate reflection of the terms of that agreement. *See DiFolco*, 622 F.3d at 255 (noting that courts may only consider documents extraneous to the complaint if there is no dispute about the document's accuracy). As the party seeking to enforce the contract, Defendants bear the burden of proving "not only the existence of the contract, but also its terms." *Dreyfuss v. Etelecare Global Solutions-U.S. Inc.*, 349 F. App'x 551, 555 (2d Cir. 2009) (citation omitted).

At this juncture, Defendants have not satisfied their burden.[9] That said, the denial is without prejudice to Defendants re-raising the issue on a full record.

---

[6] Even if the Court were to consider the settlement agreement, the Second Circuit has emphasized that the appropriate path to considering extrinsic documents at a motion to dismiss is "to convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002).

[7] Because the email exchanges attached to the Pete Declaration are not paginated, the Court uses ECF pagination in citation to the email exchanges.

[8] Defendants argue that "Plaintiff had no issues" with respect to the general release provision, but the record reflects only that Plaintiff's counsel anticipated that Plaintiff would have no objection to the general release. Defs. Mem., Dkt. 44 at 2; *see also* Pete Decl. Ex. 3, Dkt. 43 at 1.

[9] While Defendants correctly note that courts routinely enforce preliminary agreements that are not yet in their final form, *see* Defs. Mem. at 7–8, those cases are inapplicable when, as here, neither party has introduced into the record the preliminary agreement to which all parties agreed. *See, e.g.*, *Gromulat v. Wynn*, 2022 WL 4457759, at *3 (S.D.N.Y. Feb. 14, 2022) (setting forth factors used to determine whether a preliminary agreement is binding).

## II.   The Amended Complaints States a Claim for Sex Trafficking

### A. Legal Standard

Defendants further seek to dismiss Plaintiff's TVPA claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Amended Complaint fails to state a TVPA claim. "To survive a motion to dismiss under [Rule] 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, (2007)). "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013). The Court is not required, however, to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

### B. Plaintiff States a TVPA Claim

The TVPA is codified at 18 U.S.C. § 1591. Section 1591(a) provides criminal penalties for anyone who knowingly:

> (1) in or affecting interstate or foreign commerce . . . recruits [or] entices . . . by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)
>
> knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act . . . .

7

18 U.S.C. § 1591(a).  The victim has a private right of action against anyone who violates the TVPA.  *See* 18 U.S.C. § 1595(a).  Defendants argue that the Amended Complaint fails adequately to allege that Defendants enticed, recruited, or forced Plaintiff into involuntarily performing sex acts, that any such sex acts were commercial, or that Defendants benefitted from the alleged sex trafficking.  Defs. Mem. at 21–23.

As an initial matter, the TVPA's use of the phrase "will be used to cause" indicates that the statute's focus is on the enticement of persons to engage in commercial sex acts through fraud, force, or coercion; the person induced need not actually engage in a sexual act.  *See United States v. Alvarez*, 601 F. App'x 16, 18 (2d Cir. 2015) (collecting cases).  Accordingly, it is not necessary for Plaintiff to plead or prove that she actually performed a commercial sex act.

Defendants' attempt to place the alleged forced sexual conduct beyond the scope of the TVPA does not comport with Congress' intent broadly to prohibit forced sexual activity. "Numerous courts have thus found that the TVPA" covers enticement to engage in forced, coerced, or fraudulently induced commercial sex acts "even if the defendant has not 'trafficked' the plaintiff within the ordinary or traditional meaning of that word."  *David v. Weinstein Co. LLC*, 431 F. Supp. 3d 290, 299 (S.D.N.Y. 2019) (collecting cases).  This includes enticement to participate in forced sexual activity with an employer or superior.  *See, e.g.*, *id*. at 300.

In keeping with Congress' intent, courts interpret "sex act" to encompass a wide range of sexual activities, including sexual touching.  *See, e.g.*, *Ardolf v. Weber*, 332 F.R.D. 467, 477–78 (S.D.N.Y. 2019) (finding that grabbing and fondling is a sex act under the TVPA); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 521 (S.D.N.Y. 2018) (finding that manual rubbing of genitalia constituted a sex act under the TVPA).  Plaintiff adequately alleges that she participated in sex

acts, including being sexually touched, against her will, by Mr. Karac.[10]  *See, e.g.*, Am. Compl. ¶¶ 112–13.

Plaintiff adequately pleads that the alleged sex acts were commercial in nature; the Amended Complaint alleges that Defendants made job opportunities contingent upon satisfying patrons' and their own sexual demands.  Plaintiff's "reasonable expectation of receiving" a "thing[] of value" is adequate to bring the alleged conduct within the scope of the TVPA.  *Noble*, 335 F. Supp. 3d at 521 (citing *United States v. Corley*, 679 F. App'x 1, 7 (2d Cir. 2017) (summary order)).  The TVPA does not require "an explicit *quid pro quo* in order to establish that a sex act was 'commercial;'" a plaintiff's expectation of receiving improved job opportunities is sufficient.  *Eckhart v. Fox News Network, LLC*, 2021 WL 4124616, at *9 (S.D.N.Y. Sept. 9, 2021) (collecting cases).  Plaintiff adequately alleges that she expected her employers would provide her improved job opportunities, including assignments to more lucrative shifts or tables, if she acquiesced to patrons' and her employers' use of force to perform sexual acts.  *See, e.g., id.* ¶¶ 58, 63–64, 120.

Plaintiff also plausibly alleges that Defendants used or threatened force to cause her to perform commercial sex acts.  Courts employ the ordinary definition of "force" in interpreting the TVPA; accordingly, a "defendant use[s] 'force' if he exert[s] energy or strength and cause[s] a motion or change."  *Ardolf*, 332 F.R.D. at 476.  "Force" need not encompass violence; exerting energy to touch another sexually is sufficient.  *See id.* (finding that grabbing and fondling plaintiff's genitalia constituted a use of force); *Noble*, 335 F. Supp. 3d at 518–19 (finding that, *inter alia*, rubbing plaintiff's vagina and placing her hand on his penis constituted a use of force).

---

[10]   Although Plaintiff alleges that female staff were routinely molested, and that male patrons forcibly placed their genitalia against staff's bodies, Am. Compl. ¶ 55, she alleges only one specific instance where she was subject to unwanted touching by a patron, *id.* ¶ 39.

9

Ms. Martinez alleges that force or threats of force caused her to engage in sexual activity throughout the course of her employment.  For example, she alleges that Mr. Karac pressed his penis against her leg and warned her that she should be "taught a lesson" while doing so.  Am. Compl. ¶ 121; *see also id*. ¶¶ 113, 126.  On another occasion, he grabbed her waist and pulled her toward him so that he could press his penis against her buttocks.[11]  *Id*. ¶ 126.

Plaintiff also plausibly alleges that Defendants enticed her.  Courts use the ordinary meaning of "entice," which includes "arousing hope and desire."  *Noble*, 335 F. Supp. 3d at 517 (internal quotation from the Merriam-Webster Dictionary omitted); *see also Eckhart*, 2021 WL 4124616, at *8.  Courts have repeatedly found that promises of job opportunities — even if those promises are empty — are sufficient to "arous[e] hope and desire," and can entice another person within the meaning of the TVPA.  *Noble*, 335 F. Supp. 3d at 517; *see also Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 168 (S.D.N.Y. 2019); *Eckhart*, 2021 WL 4124616, at *8–9.  Plaintiff adequately alleges that she was enticed to accept employment because she expected to receive improved job opportunities in exchange for being subjected to forced sex acts.  *See, e.g.*, *id*. ¶¶ 34, 61–64, 96–99, 120.

In a final attempt to place the alleged conduct beyond the scope of the TVPA, Defendants argue that the Plaintiff does not allege that any commercial sex acts benefitted them.  The benefit requirement, however, only applies to aiders and abettors of sex trafficking.  *See Geiss*, 383 F.

---

[11]   Ms. Martinez also alleges other instances in which her employers created a risk of exposure to forced sexual acts, including by requiring and encouraging female staff to recruit male clients and to satisfy their sexual demands in exchange for a commission.  *See, e.g.*, Am. Compl. ¶¶ 98, 155, 210.  The Court notes, however, that Plaintiff's allegations that Defendants knew she would be required to perform sex acts with men whom she recruited are largely conclusory.  *See, e.g.*, *id*. ¶ 98 (alleging "[u]pon information and belief" that Defendants knew recruitment of customers included satisfying the customers' sexual demands); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 514 (S.D.N.Y. 2018) ("While a plaintiff may plead facts alleged upon information and belief . . . such allegations must be accompanied by a statement of the facts upon which the belief is founded." *Id*. (cleaned up).).

Supp. 3d at 169.  As discussed *infra*, Plaintiff alleges that Defendants directly enticed Plaintiff knowing that force would be used to cause her to engage in commercial sex acts.[12]

In short, Plaintiff has adequately alleged a cause of action under the TVPA.  Accordingly, Defendants' motion to dismiss those causes of action is denied.

### III.     Plaintiff Appears to Lack Standing to Bring Her Recordkeeping Claims

Pursuant to Article III of the United States Constitution, federal courts may only hear "cases" and "controversies."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 576 (1992).  To ensure the existence of a case or controversy, the Court must make an initial threshold determination whether the plaintiff has standing to sue.  *Id.* at 560–61.  To have standing, a plaintiff must adequately allege: (1) a concrete, particularized, actual, or imminent injury-in-fact; (2) a causal connection between the injury and the conduct complained of such that the injury is "fairly traceable to the challenged action of the defendant;" and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision from the Court.  *Id.* (internal quotation omitted).  If a plaintiff lacks standing to bring a claim, the Court has no choice but to dismiss that claim for lack of subject-matter jurisdiction.  *See Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).

---

[12]     Even if the Court were to regard Defendants as aiders and abettors, however, Plaintiff would likely still have adequately alleged a TVPA claim.  A defendant acquires a thing of value within the meaning of the TVPA by receiving sexual gratification from participation in sex acts.  *Noble*, 335 F. Supp. 3d at 521 (collecting cases).  At least once, Mr. Karac stated that he was aroused from forcibly pressing his penis against Ms. Martinez.  Am. Compl. ¶ 121.  Plaintiff also alleges that Defendants received financial benefits in the form of additional spending from customers who were recruited to visit the Box by the provision of sex acts.  *See, e.g.*, *id*. ¶ 34 (noting that Defendants told Plaintiff that they would keep ninety percent of recruits' spending at the club). The allegations in the Complaint, however, are notably thin as to whether any of the individual Defendants other than Mr. Karac benefitted from the alleged sex trafficking, or whether any Defendant other than Mr. Karac directly engaged in sex trafficking.

Although Defendants did not move to dismiss the NYLL recordkeeping claims on this basis, the Court may raise the question of standing *sua sponte*. *Thompson v. Cty. of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994) (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). Plaintiff fails adequately to plead that Defendants' alleged NYLL recordkeeping violations (Eleventh and Twelfth Causes of Action) caused her to suffer an injury-in-fact. An injury-in-fact must be "concrete and particularized" and "actual or imminent — not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (cleaned up). Plaintiff has not adequately alleged that she suffered an injury-in-fact as to the alleged recordkeeping violations because she does not state "any concrete downstream consequence of the recordkeeping violation[s]." *Chen v. Lilis 200 W. 57th Corp.*, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023) (collecting cases).

Accordingly, the Court orders Plaintiff to show cause why the recordkeeping claims should be dismissed for lack of standing or to move for leave to file an amended complaint.[13] If she does neither, the Eleventh and Twelfth Causes of Action will be dismissed without prejudice for lack of standing.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED. The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 42.

Not later than **August 31, 2023**, Plaintiff must show cause why the Eleventh and Twelfth causes of action should not be dismissed for lack of standing or file a motion, including a memorandum of law, any supporting exhibits or declarations, and a redlined version of the proposed amended complaint, for leave to file a second amended complaint.

---

[13] The copy-and-paste nature of Plaintiff's recordkeeping claims is evident from paragraph 271's use of a male pronoun to refer to Plaintiff. If Plaintiff moves for leave to file an amended complaint, the Court urges Plaintiff's counsel to remedy the numerous typos and formatting errors throughout the Amended Complaint.

The parties are ordered to appear for an initial pretrial conference on **Friday, September 15, 2023, at 10:00 A.M.** in Courtroom 443 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York, 10007.  The parties' pre-conference submissions, as described at Dkt. 33, are due on **September 7, 2023**.

**SO ORDERED.**

Date:  August 22, 2023　　　　　　　　　　　　　　　　　　VALERIE CAPRONI
　　　　New York, New York　　　　　　　　　　　　　　　United States District Judge